CASE 51—ACTION ON AN ACCOUNT—Sept. 18.

## .Denhard v. Hurst, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. REVERSED.

TRIAL—BURDEN OF PROOF—OPENING AND CLOSING ARGUMENT—
SALES—FAILURE TO DELIVER—MEASURE OF DAMAGES.

Held: 1. Where defendant by his answer admitted the delivery of
a considerable part of the goods for the price of which plain-
tiff sued, and pleaded as a counterclaim damages he alleged
he had suffered by the failure to deliver other goods, the al-
legations of the counterclaim being denied, the burden of proof
was on defendant, and he was entitled to the concluding argu-
ment to the jury.

2. If manufacturers selling carpets knew that the buyer intended
to resell them at retail, the measure of damages for the fail-
ure of the sellers to deliver the carpets is the profits the buyers
would have made if they had been delivered; but if the sellers
did not know that the carpets were to be resold at retail, the
measure of damages is the difference between the contract price
and the market value of the goods at the time and place of
delivery.

R C. AND J. J. DAVIS, ATTORNEYS FOR APPELLANTS.

The appellants ask a reversal in this case:

1. Because under the pleadings the appellants had the burden of
proof and was entitled to the closing argument, and the court
erred in refusing to grant same when claimed.

(546)

Denhard v. Hurst, &c.

2. Because the court refused to permit appellant to introduce evidence as to the damage sustained in the loss of profits on the goods which appellees had contracted to deliver.

### AUTHORITIES.

Code of Practice, sec. 526; Code of Practice, sub-sec. 6, sec. 317; Ky. Wagon Co. v. City of Louisville, 17th Ky. Rep., 366; Martin v. Macy, 4 Ky. Rep., 625; Crabtree v. Atchison, 14 Ky. Rep., 313; Bush v. Wathen, 20 Ky. Rep., 731; L. & N. R. R. Co. v. Brown, 13 Bush, 475; Laib v. Craddock, 8 Ky. Rep., 608; K. C. C. R. R. Co. v. Bowen, 8 Ky. Rep., 609; Fireman's Ins. Co. v. Schwing, 10 Ky. Rep., 833; Lucas v. Hunt, 91 Ky Rep., 279; Tiedeman on Sales, sec. 336; Benjamin on Sales, sec. 1307; Sutherland on Damages, vol. 1, p. 113; Hadley v. Baxendale, 26th Eng. Law & Equity, 398; Sutherland on Damages, vol. 2. p. 397; Shepherd v. Milwaukee Gas Co., 15 Wis., p. 333; Richardson v. Chynowith, 26 Wis., p. 659; McHue v. Fulmer, 23 Penn., 365; Bank of Montgomery. v. Reese, 26 Penn., 146; Sunderland on Damages, vol. 1, p. 90; Blue Grass Cordage Co. v. Lutherly, 17 Ky. Rep., 1127; Wakeman v. Wheeler & Wilson Co., 101 N. Y., 205.

W. W. & J. R. WATTS and LAF JOSEPH, for APPELLEES.

Mary Denhard, the appellant, is carrying on a retail furniture and carpet installment business at Louisville. On July 31, 1897, appellees made a contract with her for the sale and delivery of twenty-seven pieces of carpet. Between August 10 and October 30, 1897, appellees delivered ten pieces of the agreed value of $588.65, refusing to deliver the remaining seventeen pieces for the reason that appellant did not comply with the terms of the contract of sale.

By her answer as reformed, appellant claims damages for failure to deliver, for the increase in the market value of the carpets between the date of the contract of sale and the time of its delivery, and for the prospective profits of the sale by her if the goods had been received according to the contract of sale.

The appellant claims the burden of proof and the closing argument before the jury and the right to introduce proof of the profits she would have made on the goods, and we deny she was entitled to the burden under the pleadings or to the prospective profits claimed.

Denhard v. Hurst, &c.

### AUTHORITIES CITED.

Burden of Proof: Ky. Wagon Works v. City of Louisville, 17 Ky. Law Rep., 366; Ky. Stats., sec. 2762.

Usage and Custom: Am. & Eng. Ency. of Law, vol. 27, p. 732.

Damages: Bluegrass Cordage Co. v. Luthey, 17 Ky. Law Rep., 1127.

OPINION OF THE COURT BY JUDGE GUFFY—REVERSING.

The appellees, Hirst & Rogers, instituted this action in the Jefferson circuit court, common pleas division, against appellant, seeking to recover a judgment for the sum of $588.65, the alleged purchase price of a certain lot of carpeting. The defense relied on in the original and reformed answer and counterclaim is, in substance, that the plaintiffs sold to her and agreed and promised to deliver to her at the depot in Philadelphia a lot of merchandise, to wit, a number of rolls or pieces of carpet, the kind and amount thereof being specified in the answer, and in consideration of the said carpet, and the delivery of same at the place designated on or about the 1st of September, 1897, she agreed to settle with the plaintiffs for same on the 1st day of September, 1897, by executing her note, payable in four months after date, or within ten days by remitting cash to plaintiffs for the whole amount of the agreed price, less a discount of four per cent. on same. It is further alleged that appellant was ready at all times on and after the 1st of September, 1897, to accept and receive the above-described carpets, and to comply with her agreement concerning same heretofore stated, and that plaintiffs failed and refused to deliver the carpets so purchased by her except as therein stated. The amount furnished and the amount which plaintiffs failed to furnish are specifically set out in the answer, and it is further

pleaded in the answer that the carpets so bought were worth much more at the time of delivery than the contract price, the particulars of which are also set out in the answer, and that by the failure to deliver, and by reason of the difference in price, she was damaged in the sum of $269.31. In the second paragraph of the answer and counterclaim it is substantially alleged: That at the time of the said purchase, the plaintiffs were engaged in the manufacture of carpets, and that the style, color, finish, and quality of the carpets was especially suitable to this defendant's trade and customers. That she then had a large demand for the said carpets, and that at said time of purchase she informed plaintiffs of the facts, and made them fully acquainted with the necessity of having the carpets so purchased delivered to her by September 1, 1897, in order to meet and fill the demands of such trade for her carpets; and stated to plaintiffs at the time that unless they could furnish and deliver to her the carpets so purchased at the time agreed on, she would not make the purchase. That she would lose the trade and custom she then had for such carpets, and the profit she would make and gain by the sale thereof, and that plaintiffs, with a full understanding and knowledge of these facts, sold and agreed to deliver to her the carpets, as set out. That plaintiffs wholly disregarded their contract of sale, as aforesaid, except as stated, failed and refused to deliver her the carpets so purchased, except as in the manner set forth in the first paragraph of her answer and counterclaim. It is alleged that she had a sale for such carpets and could have sold the whole of the carpets so purchased by her, at a profit of at least twenty-five cents per yard. That they failed and refused to deliver her of the carpets purchased 2,151¾ yards, and that by reason of such failure to comply with

their agreement she lost the sale of the same, and the
profit she would have made on the same, which amounted
to the sum of $537.93. That the kind and character of
carpets she purchased from the plaintiffs could not be pur-
chased elsewhere, and that she was therefore unable to
supply the demands of her trade, and by reason of the
premises she was damaged in the further sum of $537.93,—
all of which she pleaded as a counterclaim, and prayed
judgment therefor. After some motions and a demurrer
had been overruled, and, as we think, properly, the plain-
tiffs replied. The reply may be treated as a traverse of
all the material averments of the answer so far as the
agreement to sell and deliver the amount of carpets at the
time claimed by the appellant; in short, the reply may be
taken as a traverse of all of the averments of the answer
showing a right to recovery against the plaintiffs. And it
is further alleged in the reply that plaintiffs 'were manu-
facturers of carpets at Philadelphia, Pa.; that on the 31st
day of July they entered into an agreement with defend-
ant whereby they agreed to sell her the following numbers
and yards of carpet set out in the reply at the agreed
prices set opposite, the same to be manufactured by plain-
tiffs and delivered to defendant in such lots and quanti-
ties and at such times as plaintiffs manufactured them, or
to be held by them after the manufacture thereof on order,
or subject to the order and direction, of defendant as to
the delivery thereof; that the defendant agreed in said con-
tract of purchase that she would, upon delivery of said
carpets, execute a note, payable in sixty days after date
thereof, for the value of each quantity of carpets so de-
livered prior to the 1st of September, 1897, or that said
carpets should be paid for by the defendant within ten
days after delivery in cash, less four per cent. discount;

Denhard v. Hurst, &c.

that for all goods delivered by plaintiffs to defendant after the 1st of September, 1897, defendant agreed to pay the value thereof, within ten days after delivery thereof; and that said contract was made in pursuance to the custom and usage of the trade prevailing in the manufacture and sale of carpets at that time. The delivery of the different rolls of carpet was then set out, and it was further averred that plaintiffs demanded of defendant the execution of the notes, as agreed on, which she refused to do, and that thereupon plaintiffs refused to deliver the other goods. The rejoinder of appellant traverses the averments of the reply so far as the contract and the delivery at the times and the special quantities of carpets are concerned. A jury trial resulted in a verdict and judgment in favor of plaintiffs for the sum of $588.65, with interest from the 30th day of October, 1897, to date, subject to a credit of $136 as of same date as above. Appellant's motion for a new trial having been overruled she prosecutes this appeal.

The substance of the grounds relied on for a new trial are—First, error of the court in giving the burden of proof to the plaintiffs; second, error of the court in admitting illegal and incompetent evidence; third, error of the court in refusing to allow the defendant to offer evidence as to the profits she would have made on the sale of the carpets which plaintiffs failed to deliver under their contract; fourth, error in the assessment of damages; fifth, that the court erred in permitting the plaintiffs' counsel to close the case; sixth, error in instructing the jury; and, seventh, error of the court in refusing instructions offered by defendant.

It seems clear to us that under the pleadings in this case the defendant admitted receiving a considerable

amount of goods shipped to her by the plaintiffs, and, inasmuch as the plaintiffs denied all the averments of the answer and counterclaim which tended to show a right to recover damages, it would necessarily have followed that plaintiffs would recover a judgment for some amount if no evidence had been introduced. Therefore, by the express provisions of the Code of Practice, the burden of proof was upon the defendant and she ought to have been allowed to introduce her testimony first and to conclude the argument.

It will be seen from the record that the court refused all of the instructions asked by both plaintiffs and defendant and gave the following: "In this case you should find for the plaintiff in the sum of $588.65 with interest from the 30th day of October 1897, unless you shall believe from the evidence that at the time the carpets were purchased by defendant from plaintiff it was agreed that the carpets should be delivered at the depot in Philadelphia for shipment to the defendant on or before the 1st day of September, 1897. If such was the agreement, then you should credit the $588.65 by such sum as you may believe from the evidence represents the difference between the sum that defendant was to pay for such carpets as were not delivered her and the fair market price of such carpets on the 1st day of September, 1897, not exceeding the sum of $269.31, the amount claimed by the defendant on her counterclaim." It is the contention of appellees that the only damage appellant was entitled to, if any, was the difference between the contract price and the price at which such goods could have been purchased at the time and place where the delivery was to be made, and that the verdict of the jury allowed her as much as, if not more than, she was entitled to. This contention is controverted by appel-

lant, she insisting that she was entitled to recover the profit she could have made on the sale of the carpets which should have been delivered under the contract, and which were not delivered to her. It will be seen that appellant claims that appellees fully understood the purpose for which she was purchasing the carpets, and that the sale and purchase was made in view of the retail sales to be made by appellant to her patrons, and there is proof tending to sustain this contention. It may be conceded that the general rule is that, for a failure to deliver personal property at the time and place agreed upon, the difference between the contract price and the market price at the time and place of delivery is the only damage that can be recovered. But this rule does not apply in cases where there is a special sale of a particular article for a particular purpose, and especially where the same kind of articles can not be purchased at the time and place stipulated for a delivery. We quote from Tied. Sales, sec. 336, as follows: "Buyers claim to special or consequential damages. Very often the claim is made by the buyer that the seller's breach of the contract of sale has wrought upon him injurious consequences above and beyond the difference between the market value and contract price, and the right to additional damages in liquidation of this consequential injury is asserted. The answers of the courts to this query are not by any means harmonious. But after eliminating the irreconcilable cases, it is believed that the following statement of the law is reasonably accurate and reliable. In the first the claim for special damages will not be recognized if the seller did not know the use to which the thing bought was to be put, and hence could not reasonably be expected to anticipate, in any particular, the consequences of his breach of the

contract. And it is also required, as the foundation for a claim to special damages, that the complaint or declaration of the plaintiff must allege such damages. The authorities seem also to be agreed that mere speculative profits, which the buyer claims to have been able to earn if he had gotten the goods, and which depend upon the rise and fall in price, could not be taken into account in estimating the amount of damage to which the buyer is entitled for the seller's breach of the contract. But the profits which one reasonably and reliably anticipates from the possession and manipulation of the goods bought are considered as much a part of the contract of sale as the claim to any actual increase in value at the time of delivery over the contract price, and hence the prevailing rule of law permits the recovery of such profits as special or consequential damages. For example, if a gardener or farmer buys seeds warranted to be of a certain kind or quality, the vendor of the seed is liable on the breach of that warranty for the loss of profits which the buyer would have without any reasonable doubt gained from the sale of his crop if the seed had been of the kind it was represented to be. In other cases special damages were allowed where the vendor of manure failed to deliver the quantity called for by the contract, and in consequence the yield of the land thus imperfectly manured was less than that of contiguous land which had been properly prepared; where a gas company had wrongfully refused to supply a storekeeper with illuminating gas; and where an ice dealer failed to supply a butcher with the amount of ice the latter had contracted for, in consequence of which he lost a large amount of his fresh meat." The above doctrine seems to be sustained by 2 Benj. Sales, section 1307 *et seq.* In Lumber Co. v. Bradlee, 96 Ky., 494, 16 R., 562, 29

S. W., 313, it is said, quoting from the syllabus: "Where con-
tracts for the sale of chattels are broken by the vendor
failing to deliver the property according to the terms of
the bargain, the measure of damages, as a general rule,
is the difference between the contract price and the value
of the article at the time when, and the place where, it
should have been delivered, with interest. But this rule
does not govern where its application would change the
contract actually made, or contravene the intention of the
parties. Therefore, where the vendor knows his chattels
are being purchased for resale at a particular place, he
should be held to have contemplated, as a probable result
of his failure or refusal to deliver according to contract, a
recovery by the purchaser of the difference between the
contract price and the market value at such place of re-
sale, less cost of transportation." In Cordage Co. v.
Luthy & Co. (17 R., 1127) 33 S. W., 835, this court after stat-
ing the general rule as to damages for failure to deliver
articles of merchandise, says: "Yet in the sale of manu-
factured articles, which while ordinarily found on sale,
yet in the particular case can not be found or purchased,
the damages may be measured by expected profits, where
such profits were fairly within the contemplation of both
parties." The same doctrine is announced in the case of
Newmarket Co. v. Embry & Co. (20 R., 1130) 48 S. W., 980.
In the case of Hauser v. Tate (105 Ky., 701 (20 R., 1716)
49 S. W., 475, it is said: "The general rule is that
the measure of damages for breach of an executory con-
tract includes loss of profits which grow immedi-
ately out of the contract, and which would have been
realized from its full performance, but not the loss
of profits or other damages arising out of collateral un-
dertakings entered into on the faith of the contract." In
the case at bar it is evident that the contracting parties

understood perfectly well that the appellant was purchasing the carpets for the retail trade in Louisville, Ky., and not for sale or to be used in Philadelphia at the place of delivery; and the profits expected to be made by the appellant must have been well understood to be the profit made by selling the carpets out at retail. It therefore follows that if the appellees were liable for damages at all, the profit which appellant would have made by selling the carpets so purchased from them is a damage which she is entitled to recover.

There is some evidence tending to show that the kind of carpets contracted for could not be obtained either in Philadelphia or elsewhere at the time that they should have been delivered to appellant.

It results from the foregoing that the court erred in rejecting the testimony offered by appellant tending to show the profit that she could and would have made by a sale of the carpets if they had been delivered to her, and in failing to instruct the jury upon that hypothesis. If the jury should believe from the evidence that the plaintiffs failed to deliver the goods according to contract, and should not, however, believe that the parties to the contract understood or had in contemplation that the carpets were to be resold in Louisville by retail, then the criterion of recovery would, if any, be the difference between the contract price and the market value of the goods at the time and place of delivery. But if the jury should believe that both parties understood that the object and purpose of the purchase and sale was for a resale by retail in Louisville, Ky., and further believe that the plaintiffs failed to deliver the goods according to contract, then, and in that event, the defendant would be entitled to recover the profits which she can reasonably show she would have

made by a resale of the goods if they had been delivered to her; and the jury should have been so instructed.

For the reasons indicated, the judgment appealed from is reversed, and cause remanded for a new trial upon principles consistent with this opinion.

Petition for rehearing by appellee overruled.