THE HARROW SPRING COMPANY v. THE WHIPPLE HARROW COMPANY.

*Sale—Construction of contract—Parol evidence—Damages.*

1. An agreement to furnish a former customer with a quantity of harrow teeth of the vendee's regular patterns, "such as heretofore furnished," is construed to mean teeth to correspond in *quality* with the teeth theretofore furnished, it appearing that on the day the agreement was made the parties had tested the quality of the teeth so furnished.

2. The contract provided that shipments of the goods were to be made as specified; and the vendor further agreed to furnish enough teeth, in addition to the amount named, for the vendee's season's trade, and was to have a reasonable time and notice in which to fill orders for the same, "say about 30 days." The teeth were to be manufactured from different patterns belonging to the vendee. And it is held that the vendor was to have a reasonable time under the contract, after the goods were specified or named, within which to ship the same, and that parol evidence to show that he agreed to keep the teeth on hand ready for immediate shipment was incompetent.

3. Expenses incurred by the vendee in making sales in anticipation of the delivery of the harrow teeth within the time required

by the contract, and which he failed to complete by reason of the vendor's failure so to deliver, may be recouped as damages by the vendee in a suit by the vendor upon the contract.

Error to Kalamazoo. (Buck, J.) Argued January 14, 1892. Decided February 5, 1892.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Boudeman & Adams ( H. E. Walbridge,* of counsel), for appellant.

*Osborn & Mills ( Howard & Roos,* of counsel), for plaintiff.

MONTGOMERY, J. This action was brought to recover for harrow teeth furnished by the plaintiff to the defendant during the year 1889. The defendant sought to recoup damages on the ground that the teeth furnished were not properly tempered, and particularly for the reason that they were not of as good quality as certain teeth which had been furnished to defendant, and with which tests had been made prior to the making of the contract referred to below, and also sought to recoup damages for the failure of the plaintiff to furnish the teeth within the time contemplated.

The contract was made November 21, 1888. The plaintiff had previously furnished the defendant a quantity of harrow teeth. The plaintiff's agent, Mr. Burdick, visited Eaton Rapids, then the home office of defendant, and a test of the teeth was made in his presence, which proving satisfactory, the plaintiff made to the defendant this proposition:

"We will agree to furnish you with 28,000 harrow teeth, of your regular patterns, such as heretofore furnished, and 12,000 special double-edge teeth as per pattern, at 4½ cents per pound."

The defendant accepted the proposition in writing.

1. The trial judge appears to have interpreted the words "such as heretofore furnished" as referring to the patterns spoken of, and to have construed the contract as though it had read, "We will furnish you 28,000 teeth of the same patterns heretofore used." The defendant contends that the language imports that the teeth to be furnished are to correspond to those theretofore furnished. We agree with this view maintained by the defendant. The parties had, on the very day of making the contract, tested the quality of the teeth which had been furnished, and it was evidently a matter which they had under consideration; and we think the language, fairly construed, refers to the quality of teeth to be furnished. This view is strengthened by the fact that the term "regular patterns" sufficiently fixed the style, size, and shape of the teeth, and the words "such as heretofore furnished" were wholly unnecessary to complete the description. The rulings relating to this subject are erroneous.

2. Defendant alleges as error that the court refused to permit its witnesses to testify that it was agreed that the plaintiff should have the goods on hand when ordered. The provision of the contract relating to shipments is as follows:

"Shipments of these goods to be made as specified, but not later than July 1, 1889.

"We will also agree to furnish what additional amounts of the above goods you may require for your season's trade upon the same terms and conditions, but are to have reasonable time and notice in which to fill any additional amount, say about 30 days."

The circuit judge permitted the defendant to show what orders were given at the time the contract was made, but construed the contract to mean that the plaintiff was to have a reasonable time after the goods

were specified or named within which to make the shipment, and ruled that it could not be shown by parol that plaintiff agreed to keep the teeth on hand ready for immediate shipment. In view of the fact that the teeth were to be manufactured from different patterns, which were the patterns of the defendant company, we think the trial judge correctly construed the contract to be one requiring manufacture and shipment within a reasonable time after being informed as to the goods required. Such being the construction of the contract, while it was competent for the defendant to show that it gave an order on the same day the contract was made, or designated the kind of goods required, and quantity, it was not competent to show by parol any other or different agreement relating to the time when the shipments were to be made. *Toledo & A. A. R. R. Co. v. Johnson,* 55 Mich. 461; *Coon v. Spaulding,* 47 Id. 162; *Stange v. Wilson,* 17 Id. 342. In the latter case, CAMP-BELL, J., after referring to various cases cited which were claimed to establish a contrary rule, said:

"There is in none of these cases, nor in any others that I have found (except the case in 3 Sumner), any intimation that the proof which was not valid to prove new terms of an agreement was valid to affect it indirectly, by raising presumptions concerning the belief or expectation of the parties. It is hardly possible that such a use of testimony would have eluded the ingenuity of so many learned courts and counsel, if it is really admissible. And if such proof is to be received it is manifest that the rule excluding evidence will become very difficult and uncertain in its application, if not entirely useless."

3. Complaint is made of the charge on the subject of damages. It will be seen that the contract was made with reference to the defendant's "season's trade," and it is clear that the profits to be derived by the defendant from a resale of the harrows were within the con-

templation of both parties when they assumed contract relations. The defendant at the trial offered testimony tending to show—

1. That it sold harrows which were thrown back on its hands because of defective teeth.

2. That it incurred large expense in taking orders which it was unable to fill because of the default of plaintiff in delivering the harrow teeth as required by the terms of the contract.

In treating of the defendant's right to recover damages under this evidence, the trial judge instructed the jury as follows:

"Now, I have said to you that you are not to take into account all the elements that enter into the question of these profits. What the harrows cost in the shop, the material and cost of setting up, and what they sold for,—the difference between the two would not furnish the proper criterion. You would have to consider these other elements that I have called your attention to; and then you would have to deduct from these the freight that the defendant had to pay in shipping the harrows to its customers, the expense of its sales, its office expenses,—all those various things that enter into the account, and you should take into the account,—because any other rule would compel plaintiff to pay the expenses of carrying on the defendant's business, which never is contemplated by this or any other contract. Then after you have taken all those elements into account, and found what were the net profits on each harrow that the defendant lost the sale of, then for that number of harrows you should find how much should be recouped on that account."

These instructions preclude the defendant from recovering for expense incurred in making sales, and limit the recovery to the profits which it would have made, after deducting such expense, in case it had been able to complete the sales and furnish the goods. This is clear error. Under such a rule, if the de'endant had undertaken to furnish its customers with goods at actual cost, including

cost of making sale and delivery, and had been prevented from doing so by the plaintiff's breach of contract, it could not have recovered for expenses incurred in making the sale. In a case like the present the injured party is clearly entitled to recover his damages for expenses incurred, in good faith, in anticipation of performance by the other party. 1 Suth. Dam. 110; *Mann v. Taylor*, 78 Iowa, 355 (43 N. W. Rep. 220); *U. S. v. Behan*, 110 U. S. 338 (4 Supt. Ct. Rep. 81).

There are 62 assignments of error in the record. In view of the foregoing rulings the other questions are not likely to arise on a new trial.

The judgment will be reversed, with costs, and a new trial ordered.

MORSE, C. J., MCGRATH and LONG, JJ., concurred. GRANT, J., did not sit.