### HELPER v. MacKINNON MANUFACTURING CO.

1. EVIDENCE — WRITTEN CONTRACT — PAROL EVIDENCE — SALES CONTEMPORANEOUS AGREEMENT.

Where defendant contracted to purchase from plaintiff all the scrap material plaintiff should receive for the ensuing 60 days, at certain prices, evidence in an action on such contract that the real agreement between the parties was oral, and that it was agreed that the amount of iron to be furnished would not exceed the amount furnished the preceding 60 days, was inadmissible to vary the terms of the contract.

2. SAME—CIRCUMSTANCES OF PARTIES.

Evidence was admissible, however, to show the general character of the business of the parties, and to explain what was meant by "all the scrap material" plaintiff might receive.

138 MICH.—38.

3. SALES—CONTRACTS—RESCISSION—WAIVER.

> Defendant, having agreed to purchase all the scrap iron plain-
> tiff should receive for the ensuing 60 days, on discovering
> that plaintiff was purchasing iron from wholesalers to deliver
> to defendant, on account of a decline in price, refused to re-
> ceive more iron; but later defendant notified plaintiff to be-
> gin delivering again, and, after plaintiff had delivered a fur-
> ther quantity, defendant again refused to receive more.
> *Held*, that defendant's notification to plaintiff to begin deliv-
> ering again constituted only a waiver of its right to stand on
> its first refusal, and did not constitute a new contract, waiv-
> ing plaintiffs' departure from the old.

Error to Bay; Shepard, J. Submitted November 18, 1904. (Docket No. 118.) Decided December 22, 1904.

Assumpsit by Harry Helper and Samuel Helper, copart-ners as Helper Brothers, against the MacKinnon Manu-facturing Company for goods sold and delivered. There was judgment for plaintiffs, and defendant brings error. Reversed.

*Simonson, Gillett & Clark*, for appellant.

*Edward E. Anneke* and *Fred W. De Foe*, for appel-lees.

MONTGOMERY, J. Plaintiffs are dealers in scrap iron and metal. Defendant is in the machine shop and foundry business at Bay City. Suit was brought and judgment rendered on the theory that defendant had refused to ac-cept about 70 tons of iron which it was bound to accept under the terms of a written contract between the parties. The contract reads as follows:

"BAY CITY, MICHIGAN, May 6, 1903.
"MACKINNON MANUFACTURING COMPANY,
"City.

"*Gentlemen:* We propose to furnish you all of the scrap material of the following grades which we may receive for the period of 60 days next ensuing from this date.

"No. 1 cast iron scrap at $18.00 per net ton.

"Stove plate at $14.00 per net ton.

"Yours truly,

"HELPER BROTHERS.

"Accepted.

"MacKINNON MANUFACTURING CO.,

"H. D. MacKINNON,

"Pres. and Genl. Mgr."

On the trial defendant offered to show that the real contract between the parties was verbal, and that the contract was struck off in a hurry to fix the price. Defendant also offered to show that at the time the contract was executed it was agreed that the amount of scrap iron to be furnished would not exceed the amount furnished the preceding 60 days. Both offers of testimony were properly excluded. The contract is plain and unambiguous in its terms, and is complete in itself, when the relations of the parties are understood; and to permit its terms to be disputed by showing that, instead of covering all the scrap iron plaintiffs should receive, the agreement was in fact for a limited amount, would do violence to settled rules. *Cohen* v. *Jackoboice*, 101 Mich. 409. Such testimony would tend to contradict the terms of a written instrument, and is not rendered competent by the fact that the written contract is general in its terms, if the terms employed are sufficient to create a contract susceptible of interpretation in itself. *Stange* v. *Wilson*, 17 Mich. 342; *Harrow Spring Co.* v. *Whipple Harrow Co.*, 90 Mich. 147.

While it was not competent to show that there was a contemporaneous parol agreement which varied the terms of the written contract, it was competent to show the general character and business of the parties, to enable the jury to learn what was meant by the expression "all of the scrap material of the following grades which we may receive for the period of 60 days." It is plainly evident from the writing itself that the contract was made with reference to the business in which plaintiffs were engaged, and that the undertaking of the defendant was to contract

for such scrap as would naturally and reasonably be accumulated in such business as it was then conducted. The circuit judge so construed the contract, in effect, but the defendant contends that the benefit of this ruling was withdrawn by the court's instruction on the subject of waiver. The question arose in this manner: The defendant offered testimony tending to show that, after the contract was made, there was a drop of something like $4 per ton in scrap; that thereupon the plaintiffs commenced to search out material in unusual quantities, to buy of wholesalers as they had not before been accustomed to, and thereby accumulated a much larger quantity than either party had any reason to anticipate at the time the contract was made. When defendant discovered these facts, as it claimed, it refused to accept any more iron. Later on, however, defendant's manager telephoned to the plaintiffs, saying, "Bring on your iron after dinner," or, as defendant's manager puts it, "I told them we were ready for iron; to begin delivery." After the plaintiffs had delivered a further quantity under this direction, the defendant again refused to receive any more.

The court instructed the jury, in substance, that if the direction to bring on the iron was made with knowledge of the sources from which plaintiffs had accumulated it, and of the quantity they then had on hand, this direction would constitute a waiver of the claimed departure of plaintiffs from the contract. We think this was error. The telephone message was not a new contract. As such, it would be void under the statute of frauds. There is present no element of estoppel. It is not a case where a party has been called upon to rescind a contract for fraud, and has, by his delay, or by treating the contract as binding, waived that right. The defendant's claim is that it has now accepted all the iron it was bound to take under the contract. If, after first stopping the delivery, there was doubt about this, and defendant saw fit to accept more,

the only thing it can be said to have waived (as there was no estoppel) is the right to stand on its first refusal.

For this error the judgment is reversed, and a new trial ordered.

The other Justices concurred.